1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9   DIANE BUBION,

10          Plaintiff,

11      v.                                              CASE NO. C04-5105RBL

12   JO ANNE B. BARNHART, Commissioner of            REPORT AND
     Social Security,                                RECOMMENDATION

13          Defendant.                               Noted for April 15, 2005

14

15

16          This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C.

17   §636(b)(1)(B), and Local Magistrates Rule MJR 4(a)(4), and as authorized by Mathews, Secretary

18   of H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been fully briefed.  After reviewing the

19   record, the undersigned recommends that the Court affirm the administrative decision.

                                          INTRODUCTION

20          Plaintiff Diane S. Bubion filed an application for disability benefits on May 30, 2001.  (Tr.

21   102). She protectively filed her application for SSI disability benefits on May 29, 2001 (Tr. 778,

22   782).  Plaintiff alleged that she had been disabled under the Social Security Act since at least January

23   22, 1995 due to severe fibromyalgia, depression, lower back pain, arthritis, and anemia (Tr. 125).

24

25
     Report and Recommendation
26   Page - 1

1   Plaintiff's date last insured was December 31, 1997.  Plaintiff's applications were denied initially (Tr.

2   76, 784) and on reconsideration (Tr. 81, 789).  Plaintiff requested a hearing before an ALJ.  At the

3   hearing Plaintiff amended the date of disability onset to December 31, 1997 (Tr. 38). At the time of

4   the hearing, Plaintiff was 40 years of age.  (Tr. 38).  She had a high school education, and 2 years of

5   college.  (Tr. 40, 131).  Her past relevant work included positions as a unit clerk, medical records

6   clerk, data clerk, and telephone answering service operator.  (Tr. 30, 151).  Plaintiff was last insured

7   for disability benefits on December 31, 1997.  Thus, to qualify for benefits, Plaintiff must show that

8   she became disabled on or before that date.

9        Plaintiff filed a Request for Hearing on December 14, 2001.  On October 22, 2003, the ALJ

10  issued a decision finding Plaintiff not disabled as defined in the Social Security Act.  The ALJ found

11  that Plaintiff had severe impairments, but retained sufficient residual functional capacity to perform

12  work as a semiconductor or table sorter.  (Tr. 31-33).  The Appeals Council denied review (Tr. 8),

13  making the ALJ's decision the Commissioner's final decision.  See 20 C.F.R. §§ 404.981 and

14  416.1481.  Plaintiff brings this action pursuant to Section 205(g) of the Social Security Act, as

15  amended, 42 U.S.C. §405(g), to obtain judicial review of the Commissioner's decision.

16                                        DISCUSSION

17       This Court may set aside the Commissioner's denial of benefits when the ALJ's findings are

18  based on legal error or are not supported by substantial evidence in the record as a whole.  Penny v.

19  Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is more than a mere scintilla, but less

20  than a preponderance.  Magallanes v. Bowen, 881 F. 2d 747, 750 (9th Cir. 1989).  It is such relevant

21  evidence as a reasonable mind might accept as adequate to support a conclusion.  Id.  The Court

22  must consider the record as a whole, both evidence that supports, and evidence that detracts from

23  the Secretary's decision.  Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996).  Where the evidence is

24  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be

25

26  Report and Recommendation
    Page - 2

1  upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

2  Sequential Evaluation Process

3        The claimant bears the burden of proving that he is disabled within the meaning of the Social

4  Security Act.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  Disability is defined as the

5  inability to engage in any substantial gainful activity by reason of any medically determinable physical

6  or mental impairment which can be expected to result in death or which has lasted, or can be

7  expected to last, for a continuous period of not less than twelve months. 42 U.S.C.

8  §1382c(a)(3)(A) (1992).

9        In evaluating the Plaintiff's claim, the ALJ followed the five-step sequential evaluation

10  process set forth at 20 C.F.R. §416.920 for determining whether a claimant is disabled within the

11  meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R.

12  §416.920 (2000).

13        At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

14  the alleged onset of disability (Tr. 32, Finding 2). At step two, the ALJ found that Plaintiff had the

15  following severe impairments: lumbar degenerative disc disease, herniated disc at L4-5, lumbosacral

16  facet syndrome, right knee degenerative joint disease, mild heart disease, obesity, and panic disorder.

17  (Tr. 21, Finding 3).  At step three the ALJ found that Plaintiff's impairments did not meet or equal

18  the listing of impairments (Tr. 32, Finding 4).  Following step three, the ALJ determined that Plaintiff

19  had the residual functional capacity to perform less than a full range of sedentary work (Tr. 29) with

20  additional restrictions based on her mental limitations.

21        At step four, the ALJ found that Plaintiff was unable to perform her past relevant work (Tr.

22  32, Finding 8).  At step five, the ALJ found that Plaintiff could perform other work existing in

23  significant numbers in the national economy, specifically semiconductor bonder and table sorter (Tr.

24  33, Finding 13).  Thus, the ALJ found Plaintiff not disabled as defined in the Social Security Act at

25

26  Report and Recommendation
    Page - 3

1    any time through the date of the decision (Tr. 33, Finding 14).

2          Plaintiff argues that the ALJ erred in determining that Plaintiff was not disabled, and therefore

3    not entitled to disability insurance benefits or SSI disability benefits.  The Commissioner argues that

4    the ALJ's decision is supported by substantial evidence, and is free of legal error.

5    The ALJ Properly Weighed Treating and Examining Physician Opinions

6          Plaintiff argues that the ALJ failed to give appropriate weight to the opinion of Plaintiff's

7    treating physicians.

8          The opinion of a treating physician is generally entitled to greater weight than that of a non-

9    treating physician, or non-examining physician.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

10   1989).  The opinion of an examining physician is entitled to greater weight than that of a non-

11   examining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The opinion of a non-

12   examining physician, standing alone, cannot constitute substantial evidence that justifies rejecting the

13   opinion of either a treating, or an examining physician.  Lester, 81 F.3d at 831.  To reject the opinion

14   of a treating physician which conflicts with that of an examining physician, the ALJ must set forth

15   "specific legitimate reasons for doing so that are based on substantial evidence in the record.  Winans

16   v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

17         Khalid B. Ahmed

18         Plaintiff argues that the ALJ provided an illegitimate reason for according limited weight to

19   Dr. Ahmed's May 1998 report.  Dr. Ahmed diagnosed Plaintiff with lumbar strain disc herniation,

20   lumbar spine; and internal derangement right knee.  (Tr. 752).  He did not state any specific

21   functional or work limitations.  (Tr. 750-52).

22         The ALJ contends that the report was not given controlling weight because the report

23   indicated it "was done for medical-legal purposes", and contained a warning that it was  "not a

24   complete examination for use in treatment".  (Tr. 23-24, citing Tr. 752).

25

26   Report and Recommendation
     Page - 4

1    Plaintiff argues that the ALJ may not reject medical records based on the purpose for which

2    they were obtained.  See Lester v. Chater, 81 F.3d at 832 ( the purpose for which medical records

3    are obtained is not a legitimate reason for rejecting them).  Lester is distinguishable.  In Lester,

4    records were obtained by a claimant in anticipation of litigation, and there was *no* sound basis for

5    rejecting the doctor's statements.  In this case, the ALJ noted no further treatment records from Dr.

6    Ahmed until August, 1999, at which time he indicated to Plaintiff's insurance company that she

7    needed an MRI.  (Tr. 24).  Nonetheless, Dr. Ahmed's diagnosis is not inconsistent with the ALJ's

8    determination of severe impairments.

9    The ALJ also discounted a form prepared by Dr. Ahmed on July 14, 2000, entitled

10    "Temporary Total Disability Deferment Request, Federal Family Education Loan Program (Tr. 730).

11    The form stated "[T]he disabled person became unable to work and earn money or attend school or

12    required continuous nursing or similar care on 05-04-1998.  This disabling condition is expected to

13    continue until 09-30-2000.  Diagnosis of the disabled person's present medical condition: low back

14    disc pathology." (Tr. 730).

15    In this case, the ALJ afforded the form little probative value because 1) no clinical

16    information is given; the form is not signed by either Dr. Ahmed or the claimant; pages 2 and 3 of the

17    form are not included; while the form refers to 'section 6' for a definition of temporary total

18    disability, that page is missing.  (Tr. 730);  and the form is for the purpose of deferring payments on a

19    educational loan rather than for disability pursuant to Social Security purposes (Tr. 25).

20    The ALJ need not accept a treating physician's opinion which is "brief and conclusionary in

21    form with little in the way of clinical findings to support [its] conclusion."  Magallanes at 751, citing

22    Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986).  The ALJ provided clear and convincing

23    reasons for giving little weight to this document.

24    Jasbir Mann, Treating Orthopedic Surgeon (Tr. 278-95, 303-07).

25

26    Report and Recommendation
Page - 5

1    Dr. Mann treated Plaintiff from April 1995 through November 1995.  He diagnosed Plaintiff

2  with chronic lumbosacral myofascial  ligamentous sprain of lower back with early L5-S1

3  degenerative disc disease with residual pain in the lower back. (Tr. 280-89).  He noted Plaintiff's

4  constant pain with repetitive bending, lifting, and stooping.  (Tr. 282, 306).

5    Contrary to Plaintiff's assertion, the ALJ did not reject Dr. Mann's opinions, but summarized

6  his findings (Tr. 22-23), and accommodated Dr. Mann's suggested restrictions regarding lifting,

7  bending and stooping in her assessment of Plaintiff's Residual Functional Capacity.

8    <u>Ann H. Tosomeen, M.D.</u>

9    The ALJ referred to Tosomeen's March 23, 2001, report on Ms. Bubion.[1]  Tosomeen

10  diagnosed Plaintiff with chronic back pain secondary to herniated discs with an acute exacerbation of

11  back pain, most likely lumbar spasm, and anemia.  (Tr. 360).  She noted a limited range of motion

12  secondary to back pain, but no current radicular symptoms, foot drop, or neurological change.  (Tr.

13  360).  She noted that Plaintiff was in no acute distress, and medication was prescribed.  Dr.

14  Tosomeen did not address specific functional limitations, but indicated a two-week work

15  restriction, working 2 hours per day, increasing to 4 hours daily.   In May 2001, Dr. Tosomeen

16   reported that Plaintiff could stand and walk normally, and appeared well and in no acute distress.

17  The ALJ did not reject Dr. Tosomeen's findings, since the only recommended restrictions were

18  temporary limited duty. (Tr. 375).

19    <u>Clyde Carpenter M.D, Orthopedic Surgeon</u>

20    Plaintiff opines that the ALJ gave no reason for rejecting Dr. Carpenter's opinion that

21  Plaintiff needed spinal surgery once Plaintiff's weight stabilized.  (Tr. 481).  Dr. Carpenter's review

22  of Plaintiff's MRI confirmed grade 1 spondylolisthesis at L4-5 and moderate to severe spinal stenosis

23

24    [1]The ALJ erroneously identified this as an emergency room visit.  It appears to have been an
   appointment at St. Peter's Family Practice.

25

26  Report and Recommendation
   Page - 6

1    even in the supine position.  The ALJ acknowledged Dr. Carpenter's diagnosis of Plaintiff's severe

2    back condition, and recommendation for spinal surgery.  His findings or opinions are not inconsistent

3    with the ALJ's findings regarding Plaintiff's severe impairments, or functional limitations as set forth

4    in  the  RFC assessment.

5    Najla Doughly, Primary Care Physician

6          On August 10, 2001, Dr. Doughly diagnosed Plaintiff with chronic low back pain and

7    prescribed MS Contin (Tr. 355).  On January 22, 2002, Plaintiff was diagnosed with panic attacks

8    and obesity, and prescribed Paxil and Xanax for panic attacks. (Tr. 438).  On February 13, 2002,

9    Plaintiff indicated she had stopped taking her medications, and had no panic attacks since her last

10   visit.  (Tr. 437).  Rather than rejecting Dr. Doughly's opinion, the ALJ's finding of severe back

11   impairments, and the limitations in the RFC assessment accommodate Dr. Doughly's findings.

12   Dr. Geetha Gabbita

13         Plaintiff claims that the ALJ improperly rejected the report of Dr. Geetha Gabbita.

14         Dr. Gabbita diagnosed Plaintiff with depression and  L/S back strain, and treated her with

15   antidepressants and pain medication.  Dr. Gabbita provided no clinical findings and did not indicate

16   any functional limitations. (Tr. 774-77). Dr. Gabbita provided no information inconsistent with the

17   ALJ's findings regarding Plaintiff's functional limitations.

18   Plaintiff's Testimony Regarding Her Symptoms and Limitations

19         Plaintiff claims that the ALJ's reasons for rejecting her testimony regarding her pain and

20   symptoms are not clear and convincing.

21         The ALJ found Plaintiff's testimony to be generally credible, but not to the extent alleged (Tr.

22   28).  In order to reject a claimant's subjective pain complaints, the ALJ must provide "specific and

23   cogent reasons for the disbelief".  Morgan v. Commissioner of the Social Security Association, 169

24   F.3d 595, 599-600 (9th Cir. 1999).  In determining that Plaintiff's pain testimony was not fully

25

26   Report and Recommendation
     Page - 7

1    credible, the ALJ found that Plaintiff's activities of daily living were inconsistent with the level of

2    pain she alleged.  (Tr. 28).  The ALJ noted that Plaintiff is "able to care for her children, cook, clean,

3    shop, drive, attend church".  (Tr. 32, p. 10).  Plaintiff offers explanation for the inconsistencies

4    between her testimony and daily activities;[2] nonetheless, credibility determinations remain the

5    province of the ALJ.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

6          The ALJ further noted that the Plaintiff did not go for physical therapy as recommended by

7    her doctor, she was in no acute distress upon examinations and at times exhibited no pain complaints

8    or behaviors or intermittent back pain.          The ALJ also cited large gaps in Plaintiff's treatment

9    history, with no treatment records, acute flare-ups or emergency room visits between 1995 and

10   1997.  (Tr. 28).  Under the regulations, the amount of treatment "is an important indicator of the

11   intensity and persistence of Plaintiff's symptoms."  20 C.F.R. §404.1529(c)(3).

12          The ALJ properly considered Plaintiff's daily activities, reported symptoms, medical history

13   and other related factors in discounting Plaintiff's credibility regarding her allegations of pain and

14   functional limitations.

15          In finding Plaintiff's testimony regarding her mental impairments not generally

16   credible (Tr. 29), the ALJ relied on Dr. Carpenter's April 2001 medical report, which indicated a

17   lack of anxiety, depression or agitation during Plaintiff's visit (Tr. 380); Linda Miller's August 9,

18   2001 conclusion that Plaintiff's mental illness was treatable, and her symptoms likely to improve

19   within the next 12 months with adequate mental health treatment (T r 388-89).  The ALJ also

20   referred to similar reports indicating a lack of depressive or anxiety symptoms in February and June

21   2002 (Tr. 429, 437).   The ALJ made clear and convincing findings justifying the decision to

22   disbelieve Plaintiff's allegations of excess pain, and those findings are supported by substantial

23

24   _____

        [2] Plaintiff testified that since the day of her accident, she cannot carry laundry, her son does it
25   for her; her children help with cleaning, the chores and cooking (Tr. 52).

26   Report and Recommendation
     Page - 8

1    evidence in the record.

2        Plaintiff also claims that the ALJ neglected to consider testimony that Plaintiff's medications

3    made her feel woozy, drowsy, and sluggish (Tr. 66, 178). The ALJ considered Plaintiff's testimony

4    by including a statement on avoiding hazards due to medication in the hypothetical posed to the

5    VE.(Tr. 29, 36).

6            Determination of Claimant's Residual Functional Capacity

7    State Agency Reviewers

8        Plaintiff alleges that the ALJ improperly determined her residual functional capacity by failing

9    to include all of the limitations by the state reviewing psychologists. Thomas Clifford Ph.D.

10   completed an MRFCA on September 11, 2001, which was affirmed by Janis Lewis, Ph.D. on

11   October 31, 2001. (Tr. 396-411). Dr. Clifford rated Plaintiff moderately limited in her ability to

12   maintain attention and concentration for extended periods, interact appropriately with the general

13   public, complete a normal workday or work week without interruptions from psychologically based

14   symptoms, and  perform at a consistent pace without an unreasonable number and length of rest

15   periods. (Tr. 408-09).

16       The ALJ considered the opinion of the state psychologists and determined that Plaintiff's

17   capacity for sedentary work was further reduced by her moderate difficulties in maintaining social

18   functioning and maintaining concentration, persistence, and pace (Tr. 29). Thus, Plaintiff retained

19   the ability to perform simple, routine, repetitive, one to two step tasks with only occasional contact

20   with coworkers and the public.  (Tr. 29-30).  The ALJ considered and accorded weight to the

21   opinions of the reviewing state psychologists.  The ALJ's findings are supported by substantial

22   evidence in the record.

23           The ALJ's Reliance on the Vocational Experts Testimony was Proper

24       Once the ALJ determined that Plaintiff could not perform her past relevant work, the burden

25

26   Report and Recommendation
     Page - 9

1    shifted to the Commissioner to show that plaintiff could perform other work existing in significant

2    numbers in the national economy, given her residual functional capacity.  Because Plaintiff has

3    significant non-exertional limitations not contemplated by the grids, the ALJ called upon a

4    Vocational Expert (VE) to identify jobs Plaintiff could perform given her RFC, and the availability of

5    such jobs in the national economy.  See Tackett v. Apfel, 180 F.3d 1094, 1104 (9th Cir. 1999).

6         The first hypothetical posed to the VE assumed a 34-year old individual with a high school

7    education who is able to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk 6 hours

8    in an 8-hour day with normal breaks and sit 6 hours with normal breaks.  She could never climb

9    ladders, ropes and scaffolds, never crawl but can occasionally climb ramps and stairs, and can stoop,

10   kneel, and crouch occasionally; can balance frequently, and must avoid concentrated exposure to

11   vibration, and hazards due to medication. (Tr. 68).  Based on the hypothetical,  the VE testified that

12   such an individual would be able to work as a semiconductor bonder or table sorter.  (Tr. 70).

13        In a second hypothetical, the exertional limitations changed to lifting 10 pounds occasionally,

14   and less than 10 pounds frequently (Tr. 70);  stand or walk for a total of 1 hour at a time, for a total

15   of 2 hours in an 8-hour day, sit for 6 hours in an 8-hour day, and must be able to alternate sitting and

16   standing every hour.  The non-exertional, mental and environmental limitations remained the same as

17   in the first hypothetical. (Tr. 70).  In response, the VE testified that such an individual would still be

18   able to work as a semiconductor bonder or table sorter.  (Tr. 70).  The VE further found that 58,000

19   semiconductor jobs, and 50,000 table sorter jobs were available in the national economy (Tr. 70).

20

21        In response to a question posed by Plaintiff's attorney, the VE testified that an individual

22   unable to complete an eight-hour workday more than two days a month would be unable to sustain

23   those jobs (Tr.71).  The ALJ is free to accept or reject restrictions that the claimant alleges, provided

24   his findings are supported by substantial evidence in the record.  Magallanes v. Bowen, 881 F.2d at

25

26   Report and Recommendation
     Page - 10

1  756-57.  The hypothetical posed by the ALJ to the VE reflected the claimant's limitations and was

2  supported by substantial evidence in the record.

3  **CONCLUSION**

4  Based on the foregoing, the Commissioner's decision is supported by substantial evidence in

5  the record, and should be AFFIRMED.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the

6  Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to

7  file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of

8  those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the

9  time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April**

10 **15, 2005**, as noted in the caption.

11 DATED this 25th day of March, 2005.

12 /s/ J. Kelley Arnold
   J. Kelley Arnold
13 United States Magistrate Judge

Report and Recommendation
Page - 11